**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

─────────────────────────────

SHANNON JO H.

                          Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

No. 5:21-CV-878
(CFH)

─────────────────────────────

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Law Offices of Kenneth Hiller, PLLC<br>6000 North Bailey Avenue – Suite 1A<br>Amherst, New York 14226<br>Attorney for plaintiff | KENNETH R. HILLER, ESQ. |
| Social Security Administration<br>Office of General Counsel<br>6401 Security Boulevard<br>Baltimore, Maryland 21235<br>Attorneys for defendant | AMY BLAND, ESQ.<br>JUNE L. BYUN, ESQ. |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

      Shannon Jo H.[2] ("plaintiff" or "the claimant") brings this action pursuant to 42

U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security

("the Commissioner") denying her application for supplemental security income benefits.

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  See Dkt. No. 6.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff's last name by initial only.

See Dkt. No. 1 ("Compl.").  Plaintiff moves for judgment on the pleadings and for the Commissioner's decision to be reversed and remanded for further proceedings.  See Dkt. No. 14.  The Commissioner moves for judgment on the pleadings and for the Commissioner's decision to be affirmed.  See Dkt. No. 17.  For the reasons that follow, plaintiff's motion is denied, the Commissioner's motion is granted, and the Commissioner's decision is affirmed.

## I. Background

On April 27, 2018, plaintiff filed a Title XVI application supplemental security income benefits.  See T. at 164-71.[3]  Plaintiff alleged a disability onset date of January 1, 2010.  See id. at 164.  The Social Security Administration ("SSA") denied plaintiff's claim on September 24, 2018.  See id. at 75.  Plaintiff requested a hearing, see id. at 92, and a hearing was held before Administrative Law Judge ("ALJ") Dale Black-Pennington on July 17, 2020.  See id. at 32-54.  On October 21, 2020, the ALJ issued an unfavorable decision.  See id. at 15-31.  On June 14, 2021, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  See id. at 1-5.  Plaintiff timely commenced this action on August 3, 2021.  See Compl.

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. See Dkt. No. 10.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

## II. Legal Standards

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985-86 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . .  [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (internal quotations marks, citation, and emphasis omitted).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's

independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" <u>Id.</u> § 423(d)(1)(A).  A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  <u>See id.</u> § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  <u>Id.</u> § 423(d)(3).  Additionally, the severity of the impairment is "based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience."  <u>Ventura v. Barnhart</u>, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which

significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  The plaintiff bears the initial burden of proof to establish each of the first four steps.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing Berry, 675 F.2d at 467).  If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere.  Id. (citing Berry, 675 F.2d at 467).

### III. The ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ first determined that plaintiff had "not engaged in substantial gainful activity since April 27, 2018, the

application date." T. at 20. At step two, the ALJ found that plaintiff had "the following severe impairments: depressive disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), and posttraumatic stress disorder (PTSD)[.]" Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. See id. at 21. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC")

> to perform a full range of work at all exertional levels but is limited to performing the simple, routine tasks associated with unskilled to semi-skilled work at a[ Specific Vocational Preparation ("SVP")] of 1-3, can have frequent transactional contact with supervisors and occasional contact with co-workers and the public, requires a small group or individual work environment, requires a fixed work schedule and fixed tasks, and is not able to manage changes to the workplace environment and/or tasks.

Id. at 22. At step four, the ALJ determined that plaintiff did not have any past relevant work. See id. at 25. At step five, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," the ALJ determined that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" Id. at 26. Thus, the ALJ determined that plaintiff had "not been under a disability, as defined in the Social Security Act, since April 27, 2018, the date the application was filed[.]" Id.


**IV. Arguments**[4]

---

[4] The Court's citations to the parties' briefs refer to the pagination generated by CM/ECF in the pages' headers.

Plaintiff argues that (1) the ALJ failed to reconcile the medical opinion from consultative examiner, Jeanne A. Shapiro, M.D., with his RFC determination; (2) the ALJ erred in his evaluation of plaintiff's subjective complaints; and (3) "[n]o meaningful review of the vocational expert [("VE")] testimony . . . can be conducted because the transcript of the July 2020 hearing appears to be incomplete[.]"  Dkt. No. 14-1 at 16; 8, 12.  The Commissioner argues that substantial evidence supports the ALJ's consideration of Dr. Shapiro's opinion and plaintiff's subjective complaints.  See Dkt. No. 17 at 5-17.  The Commissioner also asserts that plaintiff has not shown prejudice from the "alleged omission" from the hearing transcript.  Id. at 18.

## V.  Discussion

### A.  RFC Determination

#### 1.  Whether the ALJ Appropriately Considered Dr. Shapiro's Medical Opinion

Plaintiff argues that the ALJ erred in concluding that Dr. Shapiro's opinion was "consistent with my above noted 'paragraph B' findings of no strictly marked or extreme functional limitations and the above noted mental residual functional capacity."  Dkt. No. 14-1 at 9 (quoting T. at 24).  Plaintiff contends that the ALJ's logical is circular and warrants remand because the ALJ first determined plaintiff's RFC and subsequently discussed whether the evidence was consistent with plaintiff's RFC.  See id.  Plaintiff also asserts that the ALJ failed to reconcile Dr. Shapiro's opinion that plaintiff had moderate limitations in "sustaining concentration and performing a task at a consistent

pace and sustaining an ordinary routine and regular attendance at work" with the RFC determination.  Id. at 11.

The Commissioners argues that "[p]laintiff ignores the rest of the ALJ's discussion" which reviewed plaintiff's records reflecting "largely normal clinical findings" with "some positive findings[.]"  Dkt. No. 17 at 7-8.  The Commissioner also notes the reliance on plaintiff's activities of daily living and Dr. Shapiro's and state agency medical consultant M. Juriga, Ph.D.'s opinions.  See id. at 9-12.  To the extent plaintiff argues that the ALJ erred in failing to reconcile certain moderate limitations with the RFC determination, the Commissioner states that "there is nothing inherently disabling about moderate or even marked mental limitations[]" and the ALJ appropriately determined plaintiff's RFC based on all of the evidence in the record.  Id. at 10.

An "ALJ cannot credit a medical opinion to the extent it is consistent with his already-determined RFC."  Chhibber v. Comm'r of Soc. Sec., No. 18-CV-6039 (FPG), 2018 WL 6321393, at *4 (W.D.N.Y. Dec. 4, 2018).  "Such reasoning is circular and flawed.  The ALJ should use medical opinions to determine [the p]laintiff's RFC, and, therefore, cannot give medical opinions weight based on their consistency with the RFC."  Faherty v. Astrue, No. 11-CV-2476 (DLI), 2013 WL 1290953, at *14 (E.D.N.Y. Mar. 28, 2013); accord Simmons v. Colvin, No. 15-CV-0377, 2016 WL 1255725, at *15 (E.D.N.Y. Mar. 28, 2016).  Courts have concluded that an ALJ's "circular" reasoning may warrant remand.  See Mault v. Colvin, No. 1:14-CV-00751 (MAT), 2017 WL 1100617, at *4 (W.D.N.Y. Mar. 24, 2017) ("The final reason the ALJ gave for the weight given to [the] opinion was that it was 'consistent . . . with the adopted [RFC].'  The ALJ cannot support a decision regarding weight with a reference to an already-determined

RFC."); Simmons, 2016 WL 1255725, at *15 ("The ALJ should not have assessed [the doctor's] findings and opinions relative to the RFC; the fact that he did so suggests that the ALJ first determined [the p]laintiff's RFC and then considered the medical opinions in light of that finding."); Karabinas v. Colvin, 16 F. Supp. 3d 206, 219 (W.D.N.Y. 2014) ("The ALJ here found that . . . [the plaintiff's] testimony concerning the intensity, persistence, and limiting effects of his pain and the side-effects of his medications were 'not credible to the extent they are inconsistent with the above residual functional capacity assessment.' The Court has found no support in the regulations or the caselaw from this Circuit supporting the propriety of basing a credibility determination solely upon whether the ALJ deems the claimant's allegations to be congruent with the ALJ's own RFC finding.").

However, these cases determined that the ALJ's "circular reasoning fail[ed] where the RFC finding [wa]s not supported by substantial evidence in the first place." Mault, 2017 WL 1100617, at *4; see also Karabinas, 16 F. Supp. 3d at 219 ("The ALJ omitted the conclusions of several medical sources that supported [the p]laintiff's credibility and omitted any mention of [the p]laintiff's prescription regimen and the individual and combined side effects of his medications[.]"); Simmons, 2016 WL 1255725, at *14 (concluding that the ALJ erred in considering a medical opinion because the ALJ's logic was circular but also because the opinion was "too vague to provide sufficient support for the ALJ's specific functional assessments").

Similarly, courts have concluded that an ALJ's reasoning, despite referring back to the RFC determination, is not circular where he or she provided sufficient consideration of a medical opinion. See Abar v. Colvin, No. 7:15-CV-0095 (GTS/WBC),

2016 WL 1298135, at *5 (N.D.N.Y. Mar. 31, 2016) ("If the ALJ had indeed afforded Dr. Noia's opinion significant weight merely because it was consistent with the ALJ's RFC determination, then his reasons would have been circular.  However, the ALJ did not do so but properly analyzed every applicable regulatory factor in explaining his reasoning for affording significant weight to Dr. Noia's opinion . . .  Accordingly, we are able to decipher the basis of the ALJ's decision and recognize that the ALJ properly adhered to the regulatory factors."); David N. v. Comm'r of Soc. Sec., No. 19-CV-219 (LJV), 2021 WL 2525096, at *3, n.5 (W.D.N.Y. June 21, 2021) (citations omitted) ("It is true that an 'ALJ cannot support a decision regarding weight with a reference to an already-determined RFC.'  Here, however, the ALJ's explanation included more than enough support for giving Dr. McMahon-Tronetti's opinion 'great weight.'"); Michael R. v. Comm'r of Soc. Sec., No. 19-CV-6836 (MJR), 2021 WL 346365, at *7 (W.D.N.Y. Feb. 2, 2021) (acknowledging the plaintiff's argument about "'circular' reasoning" but finding no error in the ALJ's consideration of a medical opinion where the ALJ discussed the medical opinions, the plaintiff's activities of daily living, and the treatment evidence and "[w]hile the ALJ may not have explained how every piece of evidence was weighed against the [provider's] statements, the ALJ's rationale is apparent."); Nicole M. E. o/b/o E.F. v. Kijakazi, No. 6:21-CV-337 (MAD/DJS), 2022 WL 3577114, at *6 (N.D.N.Y. Aug. 18, 2022) (finding no error where the "ALJ [] did not discount the medical and educational professional's opinions because they did not comport with his own interpretation of the underlying data.  Rather, he had first extensively analyzed the opinions for supportability and consistency as required by 20 C.F.R. § 416.920c(b)(2) and 20 C.F.R. § 416.920c(c).  After performing that analysis, in conclusion, he stated

that the opinions remained persuasive to the extent it is consistent with the remainder of the opinion.").

On August 22, 2018, plaintiff underwent a consultative psychiatric examination with Dr. Shapiro.  See T. at 488.  Dr. Shapiro determined that plaintiff had (1) no limitations understanding, remembering, or applying simple directions and instructions, using reasoning and judgment to make work-related decisions, interacting adequately with supervisors, coworkers, and the public, maintaining personal hygiene and wearing appropriate attire, being aware of normal hazards, and taking appropriate precautions; (2) "mild-moderate moderate-marked limitations understanding, remembering, or applying complex directions and instructions[]"; (3) moderate limitations sustaining concentration and performing a task at a consistent pace, and sustaining an ordinary routine and regular attendance at work; and (4) moderate to marked limitations regulating emotions, controlling behavior, and maintaining well-being.  See id. at 491.  Dr. Shapiro concluded that plaintiff's "[d]ifficulties are caused by psychiatric problems" "and this may significantly interfere with [her] ability to function on a daily basis."  Id. at 491-92.  Dr. Shapiro noted that "[t]he expected duration of the impairment and time-frame for suggested therapy is more than 2 years.  Her prognosis may improve over time with appropriate treatment."  Id. at 492.

In his decision, the ALJ reiterated Dr. Shapiro's findings and conclusions.  See T. at 24.  Specifically, the ALJ stated that "Dr. Shapiro did not assess extreme or strictly marked limitations for any work-related activities.  She did characterize the claimant's difficulty understanding, remembering, or applying complex directions and instructions and regulating emotions, controlling behavior, and maintaining well-being as 'moderate-

marked.'" Id.  "All other vocational limitations were characterized as only moderate or 'mild-moderate' in severity, and Dr. Shapiro specifically reported that the claimant appears to have no limitations interacting adequately with supervisors, co-workers, and the public."  Id.  The ALJ noted that Dr. Shapiro "recommended no additional interventions beyond the claimant's treatment as currently provided and advised that the claimant's prognosis 'may improve over time' with continuation of appropriate treatment."  Id.  He then concluded that "on the whole, I consider Dr. Shapiro's report and opinion consistent with my above noted 'paragraph B' findings of no strictly marked or extreme functional limitations and the above noted mental residual functional capacity."  T. at 24.  The ALJ stated that,

> "[i]n particular, I note that Dr. Shapiro's assessment of moderate to marked limitation dealing with complex instructions and directions is amply accommodated by the above noted restriction to simple work within an SVP of 1-3, and Dr. Shapiro's assessment of moderate to marked difficulty regulating emotions, controlling behavior, and maintaining well-being is amply accommodated by the above noted restrictions to a fixed work schedule, reduced interaction with others in the workplace, and a restriction to a job that does not involve managing changes in the workplace environment or changes to job tasks."

Id.

The ALJ's reasoning is circular whereby the ALJ determined plaintiff's RFC and then examined whether Dr. Shapiro's opinion was consistent with his RFC determination.  See id. at 24-25.  The ALJ did not review the supportability and consistency of Dr. Shapiro's opinion as required by 20 C.F.R. § 416.920c and then craft an RFC based on the evidence that was consistent throughout the record.  This is error. See Faherty, 2013 WL 1290953, at *14.

12

Nevertheless, the error is harmless.  In determining plaintiff's RFC, the ALJ reviewed Dr. Juriga's state agency opinion.  See T. at  24.  The ALJ reiterated Dr. Juriga's conclusion that plaintiff "is only moderately limited with respect to her ability to understand, remember, and apply information, concentrate, persist, or maintain pace, and adapt or manage herself and is not at all limited in her ability to interact with others[.]"  Id. (citing T. at 62).  The ALJ also noted Dr. Juriga's determination that plaintiff "retain[ed] the mental residual functional capacity to 'perform at least the four basic demands of unskilled work[.]'"  Id. at 25 (quoting T. at 66).

The ALJ concluded that "[t]o the extent that the reports and assessments of Drs. Shapiro and Juriga are consistent with, at most, the above noted moderate 'paragraph B' functional limitations and the specific work-related limitations set forth in the above residual functional capacity," "they are mutually supportive, consistent with the foregoing treatment and clinical evidence, and not contradicted by any other medical source opinions of record.  I therefore find their assessments persuasive."  T. at 25

The ALJ stated that in reaching his RFC determination, he "carefully considered the claimant's own reports and allegations, which are partially, though not entirely, consistent with the medical evidence.  Certainly, the record documents a long history of treatment for multiple mental health conditions that significantly limit the claimant's ability to perform basic work activities."  T. at 25.  "However, to the extent that the claimant asserts that these conditions have prevented her from performing any type of substantial gainful activity on a sustained, consistent basis," "her allegations are undermined by her acknowledged, high functioning activities of daily living, inconsistent

with the foregoing clinical and treatment evidence, and contradicted by the medical opinion evidence of record."  Id.

Earlier in his decision, the ALJ reviewed plaintiff's activities of daily living.  See T. at 23.  The ALJ also explained that "most importantly, the weight of the medical evidence of record supports, at most, the work-related limitations reflected in the above residual functional capacity."  Id.  "Treatment and examination records since just prior to the application filing date document diagnoses of and subjective complaints secondary to the above noted mental health conditions, but these records also repeatedly document specific denials of mental health symptoms and normal clinical findings on mini-mental status examination[.]"  Id. (citing T. at  (Exhibits 297-98, 381-82, 395, 397, 404-405, 505, 513).

The ALJ acknowledged that "[a] month prior to the application filing date, in March 2018, the claimant presented to the emergency room with reports of worsening depression and nightmares, including intermittent suicidal ideation while dreaming at night."  T. at 23.  "Despite her symptomatic picture, the claimant demonstrated 'good behavioral control' throughout her visit and demonstrated entirely normal clinical findings on detailed mental status examination apart from a subjectively reported mood of 'blah' and a broad range affect from anxious to euthymic[.]"  Id. (citing T. at 277, 280-81).  He also noted that "[a] subsequent report indicates that the claimant's worsening symptoms had occurred within the context of the claimant having 'been off her psychiatric medication for 4 months[.]'"  Id. (citing T. at 311).  Next, "[c]linical findings on detailed mental status examination findings documented in subsequent reports are similarly positive for mood and affect disturbance and, on one occasion, mildly impaired

judgment but are otherwise entirely within normal limits[.]" Id. (citing T. at 314, 914-15, 920, 950-51, 963-64). Additionally, "[a] report dated December 6, 2018, two months after the claimant finally resumed mental health treatment, indicates that the claimant had still not started her prescribed medications or even picked them up from the pharmacy[.]" Id. at 23 (citing T. at 1234). The ALJ stated that "[p]resumably, if the claimant's mental health conditions were as debilitating as alleged, she would have been motivated to commence treatment earlier." Id. at 23-24.

The ALJ's RFC determination is supported by substantial evidence in his reliance on plaintiff's activities of daily living, treatment records, and Drs. Shapiro and Juriga's findings and conclusions. See Nicole M. E. o/b/o E.F., 2022 WL 3577114, at *6 (noting that where the court in Collins v. Comm'r of Soc. Sec., No. 20-CV-4693, 2021 WL 3054964, *5 (E.D.N.Y. July 20, 2021), remanded the ALJ's decision because of "circular" reasoning, "the court in Collins did not solely rely on the[ ALJ's] passing statements for remand. The court also found that the 'ALJ improperly rejected the opinions of [the] plaintiff's treating physicians as inconsistent with the record based on cherry-picked evidence when, in fact, the opinions were largely consistent with each other, medical evidence in the record, and [the] plaintiff's own testimony.'").

Plaintiff does not challenge the ALJ's reliance on Dr. Juriga's opinion or the treatment notes reflecting "specific denials of mental health symptoms and normal clinical findings on mini-mental status examination[,]" "good behavioral control[]" and "normal clinical findings[.]" T. at 23-24. Plaintiff also does not challenge the ALJ's reliance on Dr. Shapiro's findings, except for her contention that the ALJ did not account for moderate limitations in sustaining concentration. See infra at 18-20. Despite the

ALJ's circular logic—comparing Dr. Shapiro's opinion to the ALJ's RFC determination—the ALJ explicitly reviewed and relied on treatment records, medical opinions, and plaintiff's activities.  Accordingly, his logic does not amount to reversible error as there is substantial evidence in the record to support his RFC determination.  See Zacharopoulos v. Saul, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (citations omitted) ("[T]he findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 405(g), and therefore, the relevant question is not whether substantial evidence supports [the] plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*.'  This is a 'highly deferential standard of review.'").

Next, plaintiff argues that the ALJ erred in considering Dr. Shapiro's opinion because the ALJ did not explain how the RFC accounted for moderate limitations in concentrating, persisting, and sustaining an ordinary routine and pace, which Dr. Shapiro opined.  See Dkt. No. 14-1 at 11-12.  Plaintiff asserts that the ALJ's failure is harmful because "if [p]laintiff were to be off task or absent at a rate greater than employers would tolerate, even with a moderate limitation in these areas, a finding that [p]laintiff was disabled would have been warranted."  Id. at 11-12.  Plaintiff cites case law supportive of the contentions that if the ALJ's RFC determination conflicts a medical opinion, or the ALJ chooses to adopt only portions of a medical opinion, he or she is required to explain his or her reasoning.  See id. at 10 (citing, inter alia, Jacob K. v. Comm'r of Soc. Sec., No. 20-CV-825 (LJV), 2021 WL 4324379, at *3 (W.D.N.Y. Sept. 23, 2021); Mancuso-Rosner v. Comm'r of Soc. Sec., No. 17-CV-1019 (MJR), 2019 WL

16

666944, at *4 (W.D.N.Y. Feb. 19, 2019); Rosalie L. v. Com'r of Soc. Sec., No. 20-CV-740S, 2021 WL 4204982, at *4 (W.D.N.Y. Sept. 16, 2021)).

The Court agrees that "if the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted.'" Dioguardi v. Comm'r of Soc. Sec., 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (citation omitted). Further, "when an ALJ credits only portions of a medical source opinion, the ALJ must explain why other portions of the opinion were rejected." Bleil v. Colvin, No. 3:15-CV-1492 (LEK/ATB), 2017 WL 1214499, at *6 (N.D.N.Y. Mar. 31, 2017). However, here, the ALJ's RFC determination does not conflict Dr. Shapiro's opinion and the ALJ did not credit only portions of Dr. Shapiro's opinion.

At step four, the ALJ acknowledged that Dr. Shapiro opined moderate to marked limitations in plaintiff's ability to understand, remember, or apply complex directions and instructions and regulate emotions, control behavior, and maintain well-being. See id. at 24. He noted that Dr. Shapiro's other findings were either moderate or mild to moderate. See id. He then explained how he accommodated for the moderate to marked limitations. See id. The ALJ did not explicitly state how he accommodated for the moderate limitation in concentrating, persisting, or maintaining pace in his RFC determination. See id. at 24-25. This does not, however, constitute reversible error.

First, courts have repeatedly concluded that an RFC that limits a plaintiff to simple, routine work sufficiently accounts for moderate limitations in concentrating, persisting, and maintaining pace. See Flake v. Comm'r of Soc. Sec., No. 7:15-CV-1128 (GTS/WBC), 2016 WL 7017355, at *11 (N.D.N.Y. Nov. 10, 2016) (citing Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010)) ("Any error the ALJ may have made in

incorporating a moderate limitation in maintaining a schedule would be harmless.  A finding of moderate limitations in work related functioning does not necessarily preclude the ability to perform unskilled work.  The Second Circuit has held that moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work."), report and recommendation adopted, No. 7:15-CV-1128, 2016 WL 7017396 (N.D.N.Y. Dec. 1, 2016); see also George v. Comm'r of Soc. Sec., No. 1:19-CV-0812 (WBC), 2020 WL 5913423, at *7 (W.D.N.Y. Oct. 6, 2020) ("[A] finding of moderate limitations in mental functioning does not preclude the ability to perform unskilled work."); Vincent K.-B. v. Saul, No. 3:20-CV-157 (DJS), 2021 WL 535052, at *4 (N.D.N.Y. Feb. 12, 2021) ("[T]he assessment of Dr. Nobel that [the p]laintiff has moderate limitations to his abilities in certain of these areas is not necessarily inconsistent with Dr. Nobel's RFC opinion[]" which limited the plaintiff to "unskilled work.").

Second, plaintiff does not point to any evidence that plaintiff would likely "be off task or absent at a rate greater than employers would tolerate[.]"  Dkt. No. 14-1 at 11. Rather, she asserts that if plaintiff were to be off task or absent more than allowed, she would need to be found disabled.  See id. at 11-12.  This conjecture is insufficient to contradict the ALJ's RFC determination.  See Robert L. M. v. Berryhill, No. 8:18-CV-0208 (GTS), 2018 WL 5313452, at *7 (N.D.N.Y. Oct. 26, 2018) ("[The p]laintiff points to no evidence supporting his interpretation of these opinions, and, in particular, points to no evidence substantiating the need for such extreme limitations.  The evidence in the record certainly does not support [the p]laintiff's interpretation of Dr. Oman's marked limitation as meaning [the p]laintiff is incapable of any decision-making; rather, the

record is replete with examples of [the p]laintiff making decisions regarding his health, daily life, and legal issues.  As to the moderate limitations opined related to pace, [the p]laintiff fails to cites any legal authority that such an opinion, if accepted, requires an ALJ to specify the pace of work in order to account for that opinion."); Bush v. Comm'r of Soc. Sec., No. 7:16-CV-1007 (GTS), 2017 WL 4621096, at *8 (N.D.N.Y. Oct. 13, 2017) (citation omitted) ("[The p]laintiff fails to elucidate how the RFC fails to account for Dr. Noia's opinion.  The only limitation that Dr. Noia rated as more than mild was the moderate-to-marked limitation in the ability to deal with stress, and the ALJ appears to have reasonably accounted for this limitation by limiting [the p]laintiff to semi-skilled work with the ability to handle 'simple work-related stress.'  [The p]laintiff does not provide persuasive evidence as to why the ALJ should have interpreted the moderate-to-marked limitation in a more limiting manner.").

Further, "where 'the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.'" Petrie v. Astrue, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order) (quoting Mongeur, 722 F.2d at 1040).  As (1) the ALJ accurately relayed Dr. Shapiro's opined limitations; (2) moderate limitations in concentrating, persisting, and maintaining pace are not inconsistent with the RFC to simple, routine work; and (3) there is no evidence in the record that contradicts plaintiff's ability to do simple, routine work, the Court finds no error in the ALJ's determination.  This is further supported by the ALJ's reliance on Dr. Juriga's opinion, which found that plaintiff had moderate limitations in concentrating, persisting,

and maintaining pace, but she "retains the ability to perform at least the four basic demands of unskilled work."  T. at 66; 24-25, 62.  Plaintiff does not challenge the ALJ's reliance on Dr. Juriga's opinion.  See generally Dkt. No. 14-1.  As the ALJ's determination is supported by substantial evidence, remand is not warranted on this ground.

## 2.  Whether the ALJ Appropriately Considered Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in analyzing his subjective complaints for two reasons: (1) the ALJ overemphasized plaintiff's ability to perform self-care activities; and (2) the ALJ failed to consider any good reasons for why plaintiff did not comply with her mental health treatment.  See Dkt. No. 14-1 at 12-14.  The Commissioner argues that "[t]he ALJ did not place an undue level of emphasis on [p]laintiff's activities[.]"  Dkt. No. 17 at 15.  The Commissioner asserts that "[t]here is no per se rule that the ALJ cannot consider lack of treatment in evaluating mental complaints[]" and that the ALJ's statements are supported by the record.  Id. at 16.

In determining plaintiff's RFC, the ALJ stated that plaintiff's "noted impairments are medically determinable and severe to the extent that they cause more than minimal work-related limitations, but the evidentiary record as a whole is consistent with the residual functional capacity set forth above and inconsistent with the degree of limitation alleged."  T. at 22.  He explained that "the claimant's acknowledged activities of daily living are higher functioning than one would expect given her allegations of disability and are generally supportive of the above noted residual functional capacity."  Id. at 23.  The ALJ noted that plaintiff retained "the ability to dress, bathe, and groom herself, cook and prepare food, do general cleaning, laundry, and other chores, go shopping in public

20

stores (she reports she prefers to go accompanied or at night time)," "manage money, ride in a taxi or get rides from friends, and get along well with friends and family[.]"  Id. (citing T. at 491).  He also stated that "[i]n a work and social adjustment form she completed in October 2018, the claimant reported that her ability to work is very severely impaired but simultaneously admitted that her ability to perform home management activities" "like cleaning, tidying, shopping, cooking, looking after children, and paying bills, as well as her ability to perform leisure activities like reading, watching television, gardening, craft work, walking, and sewing is only slightly impaired[.]"  Id. (citing T. at 903).

First, as to plaintiff's contention that the ALJ erred in overemphasizing plaintiff's activities of daily living, the Court disagrees.  See Dkt. No. 14-1 at 12.  "An ALJ is entitled to take a plaintiff's activities of daily living into account in making a credibility determination."  Pennock v. Comm'r of Soc. Sec., No. 7:14-CV-1524 (GTS/WBC), 2016 WL 1128126, at *5 (N.D.N.Y. Feb. 23, 2016), report and recommendation adopted, 2016 WL 1122065 (N.D.N.Y. Mar. 22, 2016).  However, "engaging in basic activities necessary to one's welfare is markedly different from working full-time[.]"  Claudio-Montanez v. Kijakazi, No. 21-2027, 2022 WL 17819123, at *6 (2d Cir. Dec. 20, 2022) (summary order) (citing Rucker v. Kijakazi, 48 F.4th 86, 92 (2d Cir. 2022); Colgan v. Kijakazi, 22 F.4th 353, 363 (2d Cir. 2022)).

Courts have remanded an ALJ's decision where the ALJ placed undue weight on the plaintiff's activities of daily living as justification for the RFC determination.  See Pamela P. v. Saul, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *6 (N.D.N.Y. May 20, 2020) ("[T]he ALJ also appears to have placed considerable weight on his view that the

restrictive opinions of [the p]laintiff's mental status were inconsistent with her daily activities.  The Court disagrees that on this record that was a significant basis on which to discount these opinions.  The daily activities identified by the ALJ included [the p]laintiff's ability to dress, bathe, and groom herself, prepare meals, grocery shop, provide childcare, and do laundry.  There is no apparent connection between these physical activities and [the p]laintiff's mental functional abilities."); Craig R. v. Berryhill, No. 6:18-CV-0630 (LEK), 2019 WL 4415531, at *4 (N.D.N.Y. Sept. 16, 2019) (citation and emphasis omitted) ("[W]hile [the p]laintiff admitted he has the ability to 'cook four times a week,' 'shop[ ] twice a month,' and provide childcare 'every day,' the ALJ's 'heavy reliance on [the p]laintiff's reported daily activities of self-care, child-care, and hobbies does not provide a sufficient basis for discounting almost entirely the well-supported expert testimony of licensed [physicians] regarding [the p]laintiff's ability to sustain a job.'"); Christopher B. v. Comm'r of Soc. Sec., No. 1:21-CV-01238 (EAW), 2023 WL 110117, at *9 (W.D.N.Y. Jan. 5, 2023) ("[T]he ALJ seems to have overstated the nature of [the p]laintiff's daily activities.  The activities identified by the ALJ are not particularly demanding or extensive, but instead consist of playing video games for up to six hours a day, watching television, drawing, carrying groceries, helping his mother as much as he can, performing his own personal care, and caring for his pet snakes. [The p]laintiff does not drive or shop alone and reported limited contact with anyone other than his mother, with nearly all of his interaction with other individuals solely occurring online."). But see Dawn T. v. Saul, No. 8:19-CV-619 (MAD), 2020 WL 1915259, at *8 (N.D.N.Y. Apr. 20, 2020) ("[T]he Court finds that ALJ did not err in her reliance on [the p]laintiff's activities of daily living in formulating her RFC determination[]"

where the ALJ relied on the plaintiff ability to manage herself as relayed to the consultative examiner).

This Court has also found reversible error where the ALJ relied on the plaintiff's activities of daily living in making the RFC determination but failed to recognize any caveats to those activities that are clearly reflected in the record.  See Robert T. S. v. Comm'r of Soc. Sec., No. 5:21-CV-38 (CFH), 2022 WL 1746968, at *16 (N.D.N.Y. May 31, 2022) (citing Kelly W. v. Kijakazi, No. 3:20-CV-00948 (JCH), 2021 WL 4237190, at *11 (D. Conn. Sept. 17, 2021); Paul G. v. Comm'r of Soc. Sec., No. 5:18-CV-1054 (TJM), 2020 WL 9848451, at *8-9 (N.D.N.Y. Mar. 17, 2020)) ("[T]he ALJ cannot justify his decision by relying on [the] plaintiff's activities of daily living 'without taking account of the caveats and limitations [ ]he consistently asserted.'").  But see Madelyn S. v. Comm'r of Soc. Sec., No. 5:20-CV-1478 (DNH/ATB), 2022 WL 526233, at *7 (N.D.N.Y. Jan. 27, 2022) ("Nor was the ALJ's consideration of [the] plaintiff's activities  of daily living improper when evaluating [the] plaintiff's subjective allegations. . . .  The ALJ clearly recognized that plaintiff was limited, to some extent, in her activities of daily living, and considered this in conjunction with plaintiff's other reports . . . ."), report and recommendation adopted, No. 5:20-CV-1478, 2022 WL 523743 (N.D.N.Y. Feb. 22, 2022).

Plaintiff argues that the ALJ erred in relying on plaintiff's activities of daily living such as cooking, grooming, cleaning, grocery shopping, and getting along with friends and family because "[t]here is no evidence that [p]laintiff performs these activities on a regular and continuing basis commensurate with substantial gainful activity.  Rather, [p]laintiff is able to perform these within the comfort of her own home when she is able."

Dkt. No. 14-1 at 14.  Plaintiff does not point to any evidence in the record that indicates that the ALJ mischaracterized plaintiff's activities of daily living or ignored any caveats in her ability to complete them.  See id.; see also Dawn T., 2020 WL 1915259, at *8. Further, the ALJ did not rely solely on plaintiff's activities of daily living to find that her "own reports and allegations . . . [were] partially, though not entirely, consistent with the medical evidence."  T. at 25.  Rather, the ALJ relied on Drs. Shapiro and Juriga's medical opinions and plaintiff's treatment history and medical evidence.  See id. at 23-24; cf. Christian J. v. Comm'r of Soc. Sec., No. 6:18-CV-1004 (ATB), 2019 WL 6840130, at *9 (N.D.N.Y. Dec. 16, 2019) (explaining that in terms of weighing a medical opinion, "the ALJ properly relied on [the] plaintiff's activities as a factor in her overall evaluation of the medical opinion evidence and in formulating plaintiff's RFC."); see supra at 13-15 (explaining the ALJ's reliance on Dr. Juriga's opinion and the medical evidence of record).  Plaintiff does not challenge the ALJ's consideration of any of medical evidence, Dr. Juriga's opinion, or most of Dr. Shapiro's opinion.  See generally Dkt. No. 14-1.  As the ALJ considered plaintiff's activities of daily living in the context of the entire record, remand is not warranted on this ground.

Second, as to plaintiff's argument that the ALJ erred by failing to consider any reasons for plaintiff's non-compliance with mental health treatment, the Court agrees. See Dkt. No. 14-1 at 14.  However, the Court finds that any error is harmless.  As an initial matter, plaintiff cites Social Security Ruling ("SSR") 96-7p to assert that the ALJ was required to consider "any explanations" for plaintiff's failure to pursue mental health treatment.  Dkt. No. 14-1 at 15 (quoting Titles II & Xvi: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7P,

1996 WL 374186, at *7 (S.S.A. July 2, 1996)).  SSR 96-7p instructs an ALJ how to consider a plaintiff's "credibility."  SSR 96-7p, 1996 WL 374186, at *1.  However, SSR 96-7p was superseded by SSR 16-3P in 2016, which was prior to the ALJ's decision. Thus, SSR 16-3P applies here.  See Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304, at *1 (S.S.A. Oct. 25, 2017) (instructing the ALJ to "apply SSR 16-3p when [he or she] make[s] determinations and decisions on or after March 28, 2016.  When a Federal court reviews our final decision in a claim, we also explain that we expect the court to review the final decision using the rules that were in effect at the time we issued the decision under review.").

The primary difference in the Rulings is that under SSR 16-3P, the ALJ no longer assesses a plaintiff's "'credibility' and instead" is directed "to consider medical and other evidence to evaluate the intensity and persistence of symptoms to determine how the individual's symptoms limit capacity for work[.]"  SSR 16-3P, 2016 WL 1119029, at *1, n.1 (S.S.A. Mar. 16, 2016).  Otherwise, the Rulings instruct the ALJ to consider the same factors in assessing a plaintiff's alleged symptoms.  Laura D. v. Comm'r of Soc. Sec., No. 5:21-CV-445 (LEK/TWD), 2022 WL 4181570, at *4, n.4 (N.D.N.Y. Sept. 13, 2022) ("The standard for evaluating subjective symptoms has not changed in the regulations."), report and recommendation adopted, 2022 WL 4591841 (N.D.N.Y. Sept. 30, 2022).

Under SSR 16-3P, the ALJ "will consider an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities for an adult . . . ."  SSR 16-3P, 2017 WL 5180304, at *9.  "[I]f the frequency or

extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." Id. However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Id. The ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." Id. (emphasis omitted). The Ruling instructs an ALJ to "review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them." Id. at *10. In his or her decision, the ALJ should "explain how [he or she] considered the individual's reasons in [his or her] evaluation of the individual's symptoms." Id.

"Courts in this Circuit have cautioned that it 'is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" Brooks v. Comm'r of Soc. Sec., No. 6:17-CV-6614 (MAT), 2019 WL 493642, at *4 (W.D.N.Y. Feb. 8, 2019) (quoting Day v. Astrue, No. 07-CV-157, 2008 WL 63285, at *5 n. 6 (E.D.N.Y. Jan. 3, 2008); citing Cox v. Astrue, 993 F. Supp. 2d 169 (N.D.N.Y. 2012)); see also Kudrick v. Comm'r of Soc. Sec., No. 1:19-CV-1343 (WBC), 2020 WL 2933234, at *4 (W.D.N.Y. June 3, 2020) (remanding in part because "although

an ALJ may find a plaintiff less credible if he fails to follow medical treatment, the ALJ is obligated to consider any explanation a plaintiff may have for the failure.  [T]he ALJ failed to consider any explanation for [the p]laintiff's failure to quit smoking.").

Under both SSR 97-7p and SSR 16-3P, courts have held that an "ALJ's failure to consider [a] plaintiff's explanation[ ] [can] be harmless error, [where the] plaintiff's noncompliance was but one of several factors considered when assessing [the] plaintiff's credibility."  Gonzalez v. Berryhill, No. 3:17-CV-1385 (SALM), 2018 WL 3956495, at *6 (D. Conn. Aug. 17, 2018); see also Waldvogel v. Comm'r of Soc. Sec., No. 6:16-CV-0868 (GTS), 2017 WL 3995590, at *11 (N.D.N.Y. Sept. 11, 2017) ("Whether or not some of the ALJ's reasons for the credibility finding are unsupported or erroneous, any such errors would be harmless since the ALJ provided other proper reasons that are supported by substantial evidence for that finding. . . .  [B]ecause the ALJ has provided multiple reasons supported by substantial evidence, the credibility assessment must be upheld and remand is not warranted on this basis."); Feliciano Velez v. Berryhill, No. 3:18-CV-01101 (SALM), 2019 WL 1468141, at *10, n.6; *12 (D. Conn. Apr. 3, 2019) (applying SSR 16-3P and concluding that "[i]t is not apparent [] that the ALJ considered [the] plaintiff's explanation for failing to comply with the referral to see an orthopedist. . . .  [However,] because the ALJ's consideration of plaintiff's non-compliance with treatment recommendations was but one factor in the ALJ's overall credibility determination, which, as will be discussed, complies with the Regulations and is supported by substantial evidence, there is no reversible error."); accord Raymond Q. v. Saul, No. 5:18-CV-544 (FJS/CFH), 2019 WL 4758269, at *6 (N.D.N.Y. Aug. 7, 2019),

report and recommendation adopted sub nom. Raymond Q. v. Comm'r of Soc. Sec., 2019 WL 4757316 (N.D.N.Y. Sept. 30, 2019).

Here, in determining plaintiff's RFC, the ALJ stated that "[a] subsequent report indicates that the claimant's worsening symptoms had occurred within the context of the claimant having 'been off her psychiatric medication for 4 months[.]'" T. at 23 (citing T. at 311). The report indicated that in May 2018, plaintiff "reported that [in March] she had been off her psychiatric medication for 4 months. The pt reported that she had been in treatment but stopped going to treatment around August and then she ran out of her medication in December and things have gotten progressively worse since December." Id. at 311. Plaintiff identifies two records from March 2018 which state that plaintiff was "[o]ff meds x 4 months r/t lapse of insurance[]" and she reported "that that her symptoms started to worsen 4 months ago. She reports moving form Oswego County to Monroe County at that time. . . . After arriving to Monroe County [] her insurance and other benefits did not immediately transfer." Id. at 271, 277; see also Dkt. No. 14-1 at 15. One report stated that plaintiff "recently obtained insurance specific to Monroe County, however, and is eager to get connected to mental health services. Over these past four months, she reports that her depression gradually worsened . . . ." T. at 277.

The ALJ did not consider plaintiff's lack of insurance and moving to another location as a potential reason for her failure to be on medication for four months. See T. at 23. A plaintiff's inability to afford treatment is one of the examples explicitly set forth in SSR 16-3P as a potential reason why a plaintiff's treatment history might not be consistent with her or her subjective complaints. See SSR 16-3P, 2017 WL 5180304, at

*10 ("An individual may not be able to afford treatment and may not have access to free or low-cost medical services."); see also Bernadel v. Comm'r of Soc. Sec., No. 14-CV-05170 (PKC), 2015 WL 5719725, at *14 (E.D.N.Y. Sept. 29, 2015) (citations omitted) ("Courts in this Circuit have observed that a claimant's credibility regarding her impairments should not be discounted for failure to obtain treatment she could not afford[.]"); David F. v. Comm'r of Soc. Sec. Admin., No. 3:21-CV-00315 (SALM), 2021 WL 5937670, at *9 (D. Conn. Dec. 16, 2021) (remanding where the ALJ did not consider the plaintiff's failure to pursue certain treatment "due to financial constraints.").

The ALJ also noted that a December 2018 report indicated that "two months after the claimant finally resumed mental health treatment, . . . the claimant had still not started her prescribed medications or even picked them up from the pharmacy[.]" T. at 23 (citing T. at 1234). He stated that "[p]resumably, if the claimant's mental health conditions were as debilitating as alleged, she would have been motivated to commence treatment earlier." Id. at 23-24. Plaintiff contends that this "ignores any reasons behind [p]laintiff's failure to treat – including considering whether [p]laintiff's mental health, which she reported were worsened at that time, contributed to this lack of treatment." Dkt. No. 14-1 at 15-16 (citing T. at 23-24, 912-17). Plaintiff points to a record from October 2018 which reflects that plaintiff's anxiety and depression had been "worse over the past few months[]" as a potential reason for why she had not picked up or restarted her medication. T. at 912; see also Dkt. No. 14-1 at 15-16. The ALJ did not consider whether plaintiff's mental health may have been a reason for her failure to maintain or comply with her treatment.

The Court does not condone the ALJ discounting plaintiff's subjective complaints because she did not seek treatment in the time frame that the ALJ thought was appropriate. See T. at 23-24.  This is explicitly advised against in the Social Security Rulings.  See SSR 16-3P, 2017 WL 5180304, at *9-10; see also Petersen v. Astrue, 2 F. Supp. 3d 223, 236 (N.D.N.Y. 2012) ("[F]aulting a person with a diagnosed mental illness for failing to pursue mental health treatment is a 'questionable practice.'"); Volkow v. Comm'r of Soc. Sec., No. 1:18-CV-6602 (FB), 2020 WL 5211041, at *2 (E.D.N.Y. Sept. 1, 2020) ("[T]he most troubling aspect of the ALJ's opinion is his repeated criticism of plaintiff for not seeking psychiatric help sooner.  This is an inappropriate basis to discount a claimant's mental illness and is beyond the scope of the ALJ's duties.  There are myriad reasons why individuals do not seek treatment despite debilitating mental impairments: the excessive cost of treatment, the stigma associated with mental illness, the side effects of psychiatric medications . . . ."); accord Sarah B. W. v. Kijakazi, No. 8:21-CV-50 (TWD), 2022 WL 16734988, at *11 (N.D.N.Y. Nov. 7, 2022); see Johnson v. Colvin, No. 1:14-CV-00353 (MAT), 2016 WL 624921, at *2, n.1 (W.D.N.Y. Feb. 17, 2016) ("Rather than indicating a lack of a serious mental impairment, [the] plaintiff's noncompliance was very possibly a further indicator that her mental health impairments interfered with her functioning.").

However, where the ALJ's determination is otherwise supported by substantial evidence, the Court must affirm the decision.  See Snyder v. Colvin, 667 F. App'x 319, 320 (2d Cir. 2016) (summary order) (affirming the district court's decision to affirm the Commissioner's decision because although "the ALJ did not consider any reasons why the plaintiff did not seek 'formal mental health treatment[,]'" "the lack of formal mental

health treatment was just one of multiple factors considered in assessing the plaintiff's credibility, including that [the plaintiff's] allegations were unsupported by objective medical evidence, and so any error was harmless."); see also David F., 2021 WL 5937670, at *9 ("The Court is aware that in some instances, an ALJ's failure to consider reasons for a plaintiff's conservative treatment may amount to harmless error, if other reasons were considered by the ALJ in making the credibility determination and those reasons are supported by substantial evidence."). Here, the ALJ's determination concerning plaintiff's subjective complaints is supported by other substantial evidence— treatment examination findings, her activities of daily living, and Dr. Shapiro and Juriga's opinions. See T. at 23-25. Thus, the Court is required to affirm the ALJ's decision. See Tasha S. v. Comm'r of Soc. Sec., No. 20-CV-421 (FPG), 2021 WL 3367588, at *7 (W.D.N.Y. Aug. 3, 2021) (quoting Jackson v. Astrue, No. 05-CV-1061 (NPM), 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009)) ("'[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain' if the finding is supported by substantial evidence."); see also Gonzalez, 2018 WL 3956495, at *15; Waldvogel, 2017 WL 3995590, at *11; Raymond Q., 2019 WL 4758269, at *6. Accordingly, remand is not warranted on this ground.

### B. Hearing Transcript

Plaintiff argues that "[n]o meaningful review of the vocational expert testimony in this case can be conducted because the transcript of the July 2020 hearing appears to be incomplete, as it abruptly ends during the vocational expert's testimony[.]" Dkt. No. 14-1 at 16. Plaintiff asserts that remand is required because "it is unclear whether the ALJ fully and properly accounted for the vocational expert's testimony, it is unclear

whether [p]laintiff provided any additional testimony, it is unclear whether the ALJ made any additional statements, and it is unclear whether the resulting determination was based on substantial evidence." Id. at 17.

The Commissioner argues that "[p]laintiff does not directly challenge the ALJ's step five finding or reliance on the vocational expert's testimony at step five, but instead argues that something more may have happened during the hearing because it did not end in the usual way[.]" Dkt. No. 17 at 18. The Commissioner asserts that plaintiff's "argument is purely speculative, and [p]laintiff fails to show how this alleged omission disadvantaged or harmed her." Id.

Plaintiff cites a case that remanded an ALJ's decision partly because "[t]he transcript of the administrative hearing contain[ed] several inaudible insertions within the testimony of the VE in response to hypothetical questions proposed by the ALJ." Wislon v. Astrue, No. 08-CV-00007, 2009 WL 793039, at *16 (W.D. Pa. Mar. 24, 2009); see also Dkt. No. 14-1 at 17. The court concluded that "[t]hese omissions may be pertinent to the RFC determination by the ALJ. The court is unable to assess properly the weight the ALJ gave to the VE's responses in his determination of [the] plaintiff's RFC and subsequent steps of the analysis in light of the inaudible portions of the transcript." Wislon, 2009 WL 793039, at *16. However, in that case the plaintiff argued, in part, that "the ALJ erred in the characterization of [the] plaintiff's RFC because . . . the hypothetical question relied upon by the ALJ did not reflect the specific capacity/limitations established by the administrative record." Id. at *12. Here, plaintiff does not challenge the hypothetical that was presented to the vocational expert during the hearing or the ALJ's step-five conclusion. See Dkt. No. 14-1 at 16-17.

"Where the administrative record is incomplete on a dispositive factual issue, the appropriate course of action is to remand the case to the Secretary for a new hearing." Parks v. Astrue, No. 1:10-CV-01955 (GSA), 2011 WL 6211003, at *8, n.8 (E.D. Cal. Dec. 14, 2011) (citing Bailey v. Heckler, 576 F. Supp. 621 (D.D.C. 1984)).  When determining whether remand is appropriate based on an incomplete record, courts will, among other things, look to the length of the administrative transcript.  See Rodriguez v. Apfel, No. 96-CV-1132 (LBS), 1997 WL 691428, at *6 (S.D.N.Y. Nov. 4, 1997) (explaining that the transcript was nine pages long and "[w]hile the length of the transcript is not dispositive, the ALJ's interview . . . is insufficient to sustain a finding that the ALJ's disability determination was based on an adequately developed record."); see also Rivera v. Barnhart, 379 F. Supp. 2d 599, 606 (S.D.N.Y. 2005) ("The ALJ missed his opportunity in the meager eighteen page hearing transcript to fully develop the record regarding the functional effects and nonexertional limitations of [the plaintiff's] impairment."); Crespo v. Barnhart, 293 F. Supp. 2d 321, 324-25, n.3 (S.D.N.Y. 2003) (remanding where the hearing lasted ten minutes and the transcript was nine pages).

Similarly, courts have remanded where the hearing transcript contained numerous "inaudible" sections, making adequate judicial review difficult, if not impossible.  Bula v. Comm'r of Soc. Sec., No. 6:06-CV-1325 (GLS/GJD), 2009 WL 890665, at *9 (N.D.N.Y. Mar. 30, 2009) ("The transcript has dozens of '(INAUDIBLE)' sections, and it is unclear whether the missing inaudible portions are simply one word or phrases or sentences. . . .  There are significant sections of answers from the plaintiff that are mostly or totally inaudible, and this court cannot adequately review [the] plaintiff's testimony based on the quality of the transcript produced from the hearing.

While the ALJ may have heard plaintiff's testimony, the transcript of that testimony is insufficient and does not allow for an accurate review by this court."); see also Parks, 2011 WL 6211003, at *8 (remanding because "this Court counted four inaudible portions of the transcript during [the p]laintiff's testimony, *twenty-two* inaudible portions of the transcript containing the VE's testimony, and four other inaudible portions in the transcript of the administrative proceeding.").

However, as the Commissioner states, courts have refused to remand an ALJ's decision because of missing pages where the plaintiff failed to prove any prejudice stemming therefrom.  See Dkt. No. 17 at 18 (citing Pokluda v. Colvin, 1:13-CV-335 (GLS/ESH), 2014 WL 1679801, at *5 (N.D.N.Y. Apr. 28, 2014) (footnote omitted) (explaining that "[i]ncomplete administrative transcripts, however, do not warrant automatic reversals on constitutional or other grounds.  The test is not whether the Commissioner has provided counsel with everything counsel might desire, but whether the transcript that remains before the court permits meaningful or informed review.  [The plaintiff] fails to identify even one part of the transcript that is inaccurate or incomplete and/or how any part of the hearing responses or 'inaudibles' actually disadvantaged her. Hence, on its face, she cannot assert a violation of any constitutional right.")); see also Sherry L. v. Comm'r of Soc. Sec., No. 20-CV-01432, 2022 WL 2180159, at *4 (W.D.N.Y. June 16, 2022) (affirming the ALJ's decision despite "the transcript denot[ing] testimony as 'inaudible' in at least 50 spots but the majority of those classifications were clarified by surrounding testimony or re-asking of questions[]" because the "[p]laintiff did not identify any areas of 'inaudible' testimony that were consequential or critical to the ALJ's decision.").

Here, the hearing lasted approximately forty-five minutes and the transcript is

twenty-one pages long and includes testimony from plaintiff and a VE.  See T. at 32-54.

The transcript ends with the following exchange between the ALJ and the VE:

> Q: [L]et's take someone similarly situated to the claimant and born in 1992
> and thus would be a younger aged person, has limited education and the
> same past work as the claimant or lack of past work, are there any
> unskilled jobs that this individual could do?
>
> A: Yes.  Give me a moment.  Three options, packing line worker, 753.687-
> 038, light, SVP of 2, approximately 663,000 jobs in the occupational
> group; presser, 363.685-018, light, SVP of 2, approximately 25,000 jobs;
> and cleaner, 323.687-014, light, SVP of 2, approximately 547,000 jobs in
> the occupational group in the national economy.
>
> Q: What is the employer tolerance for time off task?
>
> A: Between 10% and 15% off.
>
> (The hearing closed at 11:26 a.m., on July 17, 2020.)

Id. at 53-54.

The ending of the hearing is abrupt, and the transcript does not reflect any

closing remarks from the ALJ.  See T. at 54.  However, plaintiff does not challenge the

VE's testimony, the ALJ's consideration of the VE testimony, or the ALJ's step-five

conclusion.  See Dkt. No. 14-1 at 16-17.  The plaintiff has not explained how the abrupt

ending impacts a dispositive issue.  See Parks, 2011 WL 6211003, at *8, n.8 (collecting

cases).  Rather, she presents only conjecture, stating that it is possible but unclear as to

whether there was additional testimony from plaintiff or the VE, or questions from the

ALJ.  See Dkt. No. 14-1 at 17.  As such, plaintiff has not shown prejudice by the

seemingly odd or abrupt ending of the transcript.  See Williams v. Barnhart, 289 F.3d

556, 558 (8th Cir. 2002) (per curiam) (citation omitted) (explaining that the plaintiff gives

no indication what material facts were supposedly omitted or how any missing portion of

the transcript could bolster her case. . . .  The remaining omissions are small gaps in the transcript that do not 'interfere with comprehension of the testimony to an extent that would hinder fair review.'").  Rather, the ALJ received testimony from plaintiff and the VE and the hypothetical that the ALJ presented to the VE is identical to his RFC determination.  See T. at 34-54; see also Mark E. v. Kijakazi, No. 8:20-CV-425 (FJS), 2021 WL 4168590, at *10 (N.D.N.Y. Sept. 14, 2021) (concluding that a one word omission in the hearing transcript did not constitute prejudicial error because "[i]t is possible that the omitted word in the ALJ's question deviated from her functional capacity findings and, thus, that the vocational expert answered questions that were not relevant to [the p]laintiff.  However, there is no reason to believe that the ALJ deviated from her RFC determination.").  As the Court has determined that the ALJ's RFC determination is supported by substantial evidence and plaintiff has not shown prejudice by the abrupt ending to the administrative transcript, remand is not warranted on this ground.

## VI.  Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 17) is **GRANTED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 18, 2023
          Albany, New York

Christian F. Hummel
U.S. Magistrate Judge